In the Matter of the Application of the COUNTY OF FULTON and Others, Petitioners, for a Certiorari Order against BOARD OF HUDSON RIVER REGULATING DISTRICT, Respondent.

Third Department, January 14, 1931.

*Alfred D. Dennison,* for the petitioners.

*Charles W. Walton* [*Nathan L. Miller* of counsel], for the respondent.

WHITMYER, J. On May 7, 1924, the Board of Hudson River Regulating District made its final order adopting plans for the construction of a reservoir. The plans, as adopted, provided for the construction and maintenance of a power-driven ferry across the reservoir at the hamlet of Northampton. Objections were made to the ferry. All favored a bridge, with the difference that some wanted it at Northampton, and others at Batchellerville, five miles below Northampton. Thereupon, hearings were held by the Board, pursuant to sections 453 and 455 of the Conservation Law, to aid the Board in determining whether or not, in its opinion, any change should be made in the official plan. The notice was to all persons interested in the project for a highway bridge in the vicinity of Northampton or Batchellerville, instead of the ferry, which had been planned.

On May 22, 1929, pursuant to said sections, the Board certified

its resolution for such modification of the plans to the Water Power and Control Commission for approval.

On June 3, 1929, the Water Power and Control Commission approved the change. Thereupon and on June 13, 1929, the Board made its final order determining that public interest required the change.

That is the determination to be reviewed.

Whether or not the determination is reviewable by certiorari is the first question.

Certiorari lies (1) where the right to the order or to a writ is expressly conferred or authorized by a statute; or (2) where a writ might be issued at common law by a court of general jurisdiction and the power of the court to grant it is not expressly taken away by statute. (Civ. Prac. Act, § 1284.)

The procedure here was under sections 453, 454 and 455 of the Conservation Law and is not questioned, except as to the power to review. Section 454 provides that any person or public corporation affected by the final determination of the Board may review it by certiorari upon notice to the Attorney-General or that the Attorney-General may cause it to be so reviewed.

Here, the question of the effect of an alteration is involved. The power to alter is given by section 455, which provides for notice and hearing as in the first instance and requires that the same proceedings shall be had as provided by sections 453 and 454 of the law. It is claimed that the right to review is not thereby expressly conferred. Whether so or not, we think that the plan, as altered, became the final plan, when finally adopted, and that the right to review exists.

Section 1304 of the Civil Practice Act specifies the questions which may be reviewed.

Of these, it will be necessary to consider only (1) whether or not, in making the determination, any rule of law affecting the rights of petitioners was violated to their prejudice; and (2) whether or not, upon all the evidence, there was such a preponderance of proof against the existence of any of those facts that the verdict of a jury, affirming the existence thereof, rendered in an action in the Supreme Court triable by a jury would be set aside by the court as against the weight of evidence.

The alleged violation of their rights, under section 447 of the Conservation Law, is the first objection on the part of the petitioners. When passed, the section was section 446-a, added by Laws of 1926, chapter 683, section 1, effective April 30, 1926. It was

changed to section 447 by Laws of 1928, chapter 242, section 13, effective March 5, 1928. It provided that no action or proceeding, then pending in any court, should be affected thereby. Hence, the section is without application here.

However, assuming that it is applicable, the Board clearly had the power to do what it did.

The subject-matter of the section is " Discontinuance or relocation, or both, of highways, roads and streets."

And it provides, so far as material, that " if the board shall deem it necessary to discontinue a public highway   *   *   * because of its interference with the proper location of a reservoir for which preliminary plans shall have been adopted as provided in this article, it may discontinue it." A semi-colon follows, and the section then provides " and if the board shall determine that the public interest so requires, it may relocate such highway   *   *   * along a course wholly or partly within or without the high flow line of such reservoir,   *   *   * or, in lieu of such a relocation may establish new highways to connect with then existing highways,   *   *   * to afford a substantial equivalent, for purposes of highway traffic, of such a relocation."

So far as appears, the Board did not discontinue the old highway crossing at Northampton, although the flooding of the basin would necessitate its discontinuance. But, under the section, the Board had that power. And there has been no relocation of the old highway so as to require a " substantial equivalent " for the change which was made. The Board determined, merely, to abandon the proposal for the ferry at Northampton and to substitute a bridge at Batchellerville. This was not a discontinuance of the old highway and a relocation, within the meaning of the section. Discontinuance and relocation, under the section, are independent acts. The Board may discontinue without reference to relocation, and may relocate only if it " shall determine that the public interest so requires." No such determination was made. It was determined, merely, that the public interest required a crossing by a bridge without designating it as a substitute for any particular highway, which was bound to be flooded and then necessarily discontinued.

Finally the power to alter is committed to the Board. Hearings were held, resolutions of boards and bodies were received and read, and arguments in the matter were heard. No one wanted a ferry and all wanted a bridge, some at Northampton, others at Batchellerville. For Northampton the claims were: The age of the old road there; the extent of the traffic on that road, as compared with the road by way of Batchellerville; the number of main routes converging at Northampton, as compared with the number con-

verging at Batchellerville; the shorter distance to Northville across the reservoir; the division of the town and school district; the general inconvenience and inaccessibility. For Batchellerville the claims were: The topography of the two places, making Batchellerville the more suitable for a bridge, although Northampton was more suitable for a ferry; the lesser cost of a bridge at Batchellerville; the offer of the town of Edinburgh, Saratoga county, across from Batchellerville, to acquire the rights of way and to build the approaches to the bridge; the improved county highway, officially projected from Batchellerville eastward, providing a new and shorter connection with Saratoga Springs and other points, making it more convenient and accessible for all living as far west as Schenectady, while from that point west the travel would naturally be by way of Gloversville, along the northerly side of the reservoir.

Altogether, the Board determined that the bridge at Batchellerville will more adequately serve the public. If the determination is not confirmed, the only effect will be to leave the plan as it was, namely, for a ferry at Northampton. It does not appear that the determination was illegally, arbitrarily or capriciously made and we see no reason for interference.

We think that the determination should be confirmed, with fifty dollars costs.

All concur.

Determination confirmed, with fifty dollars costs and disbursements.